IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MERRICK BONNEAU**,

    Plaintiff,

v.

**CITY OF PORTLAND,** *et al.*,

    Defendants.

Case No. 3:18-cv-518-SI

**OPINION AND ORDER**

Merrick Bonneau, Plaintiff *pro se*.

William W. Manlove, III, Senior Deputy City Attorney, 1221 SW Fourth Avenue, Suite 430, Portland, OR 97204. Of Attorneys for Defendants City of Portland, Christopher Devlin, Randy Castaneda, Michael Jones, and Timothy Robinson.

Andrea D. Coit, Hutchinson Cox, 940 Willamette St., Suite 400, Eugene, OR 97440. Of Attorneys for Defendant Scott Groshong.

**Michael H. Simon, District Judge.**

    Plaintiff Merrick Bonneau brings this lawsuit under 42 U.S.C. § 1983 against the City of Portland and five Portland Police officers (collectively, the City Defendants). Mr. Bonneau alleges that Portland police officers unlawfully stopped, arrested, and searched him at a drug checkpoint at Union Station in downtown Portland in violation of the Fourth Amendment. The City Defendants move for summary judgment. ECF 120; ECF 130. Because the Court concludes

PAGE 1 – OPINION AND ORDER

that the City Defendants did not violate Plaintiff's Fourth Amendment rights, the Court grants their motions and dismisses Plaintiff's claims.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Plaintiff did not file a response to the pending motions for summary judgment. A court may not, however, grant summary judgment by default. *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013). When a party fails to respond to a fact asserted by the movant, a court may:

> (1) give [the party] an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule was amended in 2010 to incorporate the "deemed admitted" practice of many courts—when a party fails to respond to an asserted fact, that fact may be "deemed admitted" (considered as undisputed). *Heinemann*, 731 F.3d at 917. Here, the Court will consider as undisputed the facts Defendants assert in their unopposed motion.

Considering the City Defendants' account of the facts as undisputed does not alone warrant summary judgment. Instead, the Court will "determine the legal consequences . . . and permissible inferences" from those facts. *Id.* (quoting Fed. R. Civ. P. 56 advisory committee notes to 2010 amendment). Accordingly, the Court considers the pending motions on the merits in light of the undisputed facts.

## BACKGROUND

### A. Procedural Background

Originally represented by counsel, Plaintiff filed this lawsuit in March 2018. In addition to the City Defendants, Plaintiff's Complaint also named a federal officer, Guy Gino, and the United States as Defendants. Plaintiff's Complaint also included a putative class action claim in addition to his individual claims. On July 3, 2019, the Court granted Defendant Gino's motion to dismiss based on qualified immunity and dismissed Gino from this case. ECF 42. On January 21, 2020, the Court granted Plaintiff's counsel's motion to withdraw. ECF 60. Plaintiff has since proceeded *pro se*. The Court then dismissed Plaintiff's class action claim for want of qualified counsel on March 26, 2020. ECF 92, at 2 n.2. In that same Opinion and Order, the Court also dismissed the United States from this lawsuit. ECF 92, at 1 n.1. After that, only Plaintiff's individual claims against the City Defendants remained.

The City Defendants now move for summary judgment. As noted, Plaintiff did not respond to these motions. The Court *sua sponte* extended Plaintiff's deadline to respond by four

weeks. ECF 133. Plaintiff again did not respond. The Court therefore considers Defendants' motions without the benefit of a response from Plaintiff.

**B.  Factual Background**

In April 2016, Plaintiff travelled by train from Portland to New York City to visit a friend for one week. Plaintiff returned home on the morning of April 13, 2016 at Union Station in Portland. Plaintiff's luggage contained a vaporizer pen to smoke marijuana extract. As Plaintiff stepped off the train and walked down the platform, he saw two police officers. One officer, Officer Michael Jones, was searching a passenger's luggage and the other officer, Officer Scott Groshong, stood nearby with a police dog, named "Rex." Officer Groshong stood a few feet behind Rex.

These officers were part of Portland Police Bureau's Drugs and Vice Division and assigned to the High Intensity Drug Trafficking Area Interdiction Taskforce (HIT). HIT is an interagency task force comprised of police officers from the Drugs and Vice Division and officers or agents from the U.S. Department of Homeland Security. The purpose of HIT is to disrupt the interstate transportation of illegal drugs and proceeds from the sale of illegal drugs. Rex is a police dog trained to detect the smell of powder cocaine, crack cocaine, heroin, marijuana, and methamphetamine. Rex passed the Oregon Police Canine Association certification test four times in 2013 and 2014, once in 2015, and again on April 17, 2016. Officer Groshong and Rex had carried out over 100 deployments together. Based on his experience with Rex, Officer Groshong believed Rex to be a reliable drug detector.

As Plaintiff approached the officers, Plaintiff altered his path and walked closer to the outer edge of the platform rather than straight ahead directly towards the officers. When Plaintiff passed Officer Groshong, Rex turned his head toward Plaintiff and began to follow him. Plaintiff had with him a roller suitcase with a backpack strapped on top. Rex walked up to Plaintiff's

PAGE 4 – OPINION AND ORDER

luggage and placed his nose at the base of Plaintiff's backpack and sniffed. As Rex sniffed Plaintiff's backpack, Officer Groshong did not make any commands or signals to Rex. Seeing that Rex continued to sniff at the base of Plaintiff's backpack, Officer Groshong informed Officer Jones of Rex's alert. Officer Groshong then called Rex off Plaintiff's luggage.

Officer Jones and another officer, Officer Randy Castaneda, stopped Plaintiff and informed him that Rex had alerted to the presence of drugs in his luggage. Plaintiff appeared nervous and evasive and pulled the luggage closer to him. Officer Jones asked Plaintiff where he was travelling from, and Plaintiff responded that he had just visited a friend for a week in New York. In Officer Devlin's experience, individuals that traffic illegal drugs often do so by train to avoid the security checkpoints at airports. Based on Rex's alert, Plaintiff's nervous behavior, and Plaintiff's short trip by train, Officers Jones and Castaneda believed that Plaintiff likely either possessed illegal drugs or proceeds from the sale of illegal drugs in his luggage.

Officer Jones asked Plaintiff if he had any drugs in his luggage, and he said that he did not. Officer Jones then asked Plaintiff if he could search Plaintiff's luggage, and Plaintiff refused. Officer Jones then explained that Plaintiff could either consent to a search of his luggage or leave it with the officers as they applied for a search warrant. Officer Jones explained to Plaintiff that if he left his luggage with the officers, they would provide him with a receipt so that he could get it back later. Plaintiff refused.

Officer Christopher Devlin then joined the discussion and made the decision to handcuff and arrest Plaintiff. Officer Groshong transported Plaintiff to the Portland Police Bureau Central Precinct. When they arrived at the Central Precinct, Officer Groshong unhandcuffed Plaintiff and placed him in a holding cell. Officer Devlin or Castaneda then read Plaintiff his *Miranda* rights. Officer Devlin then prepared an application for a search warrant. Officer Timothy Robinson, a

PAGE 5 – OPINION AND ORDER

HIT supervisor, reviewed Officer Devlin's affidavit for the warrant. Within a few hours, Deputy District Attorney Travis Sewell told Officer Devlin that he would approve the affidavit and warrant for review by a judge but encouraged Officer Devlin to ask Plaintiff again if he would consent to the search.

After his conversation with District Attorney Sewell, Officer Devlin informed Plaintiff that Sewell had approved the affidavit and warrant for submission to a judge. Officer Devlin asked Plaintiff if he would consent to a search of his luggage. Plaintiff agreed to the search as long as he could hold up each item for the officers' inspection and then place each item back in his bags. The officers agreed to this manner of search.

Plaintiff then opened his bags and pulled out each item, allowing Officer Castaneda to inspect. The search revealed no illegal drugs or proceeds from the sale of illegal drugs. Officer Devlin immediately released Plaintiff at the completion of the search. Plaintiff was held in custody for a total of five to six hours.

## DISCUSSION

### A. Plaintiff's Investigatory Stop

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)). This reasonable suspicion standard depends on "both the content of information possessed by police and its degree of reliability" and as well as the totality of circumstances. *Id.* at 397 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence" and requires "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Additionally, an alert from a

certified drug police dog provides probable cause to search. *Florida v. Harris*, 568 U.S. 237, 246-47 (2013) ("[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").

Plaintiff's stop at the train station does not amount to a Fourth Amendment violation because Officers Groshong and Jones had reasonable suspicion of criminal activity. Officer Jones only stopped Plaintiff when Officer Groshong informed him that Rex had alerted to the scent of illegal drugs in Plaintiff's luggage, and the officers knew that Rex was certified in detecting the scent of illegal drugs. Because a certified drug police dog's alert provides a basis for probable cause, *see Harris*, 568 U.S. at 246-47, it also provides a basis for reasonable suspicion. *See Wardlow*, 528 U.S. at 123 (stating that probable cause is a higher standard than reasonable suspicion). Rex's alert therefore provided the officers with reasonable suspicion to stop and question Plaintiff.

**B.  Plaintiff's Arrest**

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a 'fair probability' that the suspect has committed a crime." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). When evaluating whether there are facts suggesting a fair probability that the suspect had committed a crime, courts look to the totality of circumstances known to the arresting officers. *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010). Further, probable cause is determined in light of the collective knowledge of all

officers involved in the arrest. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) ("Under the collective knowledge doctrine, we must determine whether an investigatory stop, search, or arrest complied with the Fourth Amendment by 'look[ing] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action].'" (alteration in original) (quoting *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986))).

Plaintiff's arrest did not violate the Fourth Amendment because Officer Devlin had probable cause to believe that Plaintiff possessed illegal drugs or proceeds from the sale of illegal drugs in his luggage. Officer Devlin knew that Rex was certified in detecting the scent of illegal drugs and that Rex had turned his head toward Plaintiff when he walked by and then followed and sniffed Plaintiff's luggage. Officer Devlin also knew that Plaintiff's short trip by train was consistent with typical behavior of someone who had travelled to sell illegal drugs. Further, Officer Devlin knew that Plaintiff had tried to avoid Officers Groshong and Jones when walking down the platform and had been nervous and evasive when responding to their questioning. Thus, the totality of circumstances suggests that there was a fair probability that Plaintiff had committed a crime, providing Officer Devlin with probable cause to arrest Plaintiff.

## C. Search of Plaintiff's Backpack

"An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996). The Ninth Circuit considers five factors in determining whether consent to a search was freely given: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether

the defendant was told that a search warrant could be obtained." *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). No one factor is determinative, however, as the question of voluntary consent is determined by the totality of circumstances. *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).

Plaintiff voluntarily consented to the search of his luggage. Plaintiff demonstrated his knowledge of his right to refuse to consent to the search because he had done so at the train station. And when Plaintiff arrived at the Central Precinct, the officers immediately removed his handcuffs and read Plaintiff his *Miranda* rights. Later, Officer Devlin told Plaintiff that he planned to apply for a search warrant, and at that point, Plaintiff agreed to the search. Further, during Plaintiff's deposition, Plaintiff characterized his agreement to the search as a "mutual agreement" and a "compromise." *See* ECF 122-1, at 11, 35. Thus, the search of Plaintiff's luggage did not violate the Fourth Amendment.

In sum, Plaintiff did not suffer any Fourth Amendment violation in connection with the April 13, 2016 incident at Union Station and the Central Precinct. The Court therefore dismisses Plaintiff's claims against all Defendants.

## CONCLUSION

The Court GRANTS Defendants' Motions for Summary Judgment (ECF 120; ECF 130). The Court dismisses Plaintiff's claims with prejudice.

**IT IS SO ORDERED**.

DATED this 22nd day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge